The **UNITED STATES of America,**
Plaintiff,

v.

**Robert B. SUTTON, et al., Defendants.**

No. 82–C–1069–BT.

United States District Court,
N.D. Oklahoma.

April 4, 1984.

Mark Kreitman, Jerome Weiner, Dept. of Energy, Washington, D.C., for plaintiff.

Anthony Sutton, Tulsa, Okl., George W. Bramblett, Jr., Charles C. Frederiksen, Sharon Freytag, Eliot Shavin, Haynes & Boone, Dallas, Tex., Mitchell B. Lansden, Baton Rouge, La., for defendants.

## ORDER OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRETT, District Judge.

Before the Court for consideration is the defendants' motion for summary judgment. Plaintiff has filed its response; defendants have replied. Further, oral arguments on the motion were heard by the Court on November 23, 1983. For the reasons set forth below, the Court finds the motion for summary judgment should be overruled.

Defendants base their motion for summary judgment on the recent United States Supreme Court case, *Immigration and Naturalization Service v. Chadha,* —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). In *Chadha,* the constitutionality of the one-House veto provision contained in section 244(c)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1254(c), was before the Court. Alien Chadha was admitted to the United States on a nonimmigrant student visa in 1966. His visa expired on June 30, 1972. On October 11, 1973, Chadha was ordered by the District Director of the Immigration and Naturalization Service to show cause why he should not be deported. A hearing was held before an immigration judge at which time Chadha conceded he was deportable since his visa had expired. The hearing was adjourned to allow Chadha to file an application for suspension of deportation under § 244(a)(1) of the Immigration and Nationality Act. The deportation hearing was then resumed and on June 25, 1974, the immigration judge ordered that Chadha's deportation be suspended. A report of the suspension was transmitted to Congress in

accordance with § 244(c)(1) of the Act.[1] Congress then had the power under § 244(c)(2) of the Act to pass a resolution or "veto" the Attorney General's determination that Chadha should not be deported. Section 244(c)(2) states:

"(2) In the case of an alien specified in paragraph (1) of subsection (2) of this subsection—if during the session of the Congress at which a case is reported, or prior to the close of the session of the Congress next following the session at which a case is reported, either the Senate or the House of Representatives passes a resolution stating in substance that it does not favor the suspension of such deportation, the Attorney General shall thereupon deport such alien or authorize the alien's voluntary departure at his own expense under the order of deportation in the manner provided by law. If, within the time above specified, neither the Senate nor the House of Representatives shall pass such a resolution, the Attorney General shall cancel deportation proceedings."

The power of the Senate or House of Representatives to pass a resolution in opposition to the Attorney General's decision to suspend deportation is called a "one-House veto."

After the House veto, the immigration judge reopened Chadha's deportation proceeding to implement the House order. Chadha sought appellate review of that decision on the basis that § 244(c)(2) was unconstitutional. The Supreme Court agreed with Chadha, finding the one-House veto contained in the Immigration and Nationality Act was unconstitutional. Examining the intent of the Framers in light of the presentment clauses and the bicameralism requirements of Art. I, §§ 1, 7, the Court said:

"Clearly, when the Draftsmen sought to confer special powers on one House, in-dependent of the other House, or of the President, they did so in explicit, unambiguous terms. These carefully defined exceptions from presentment and bicameralism underscore the difference between the legislative functions of Congress and other unilateral but important and binding one-House acts provided for in the Constitution. These exceptions are narrow, explicit, and separately justified; none of them authorize the action challenged here. On the contrary, they provide further support for the conclusion that Congressional authority is not to be implied and for the conclusion that the veto provided for in § 244(c)(2) is not authorized by the constitutional design of the powers of the Legislative Branch." *Chadha* at —, 103 S.Ct. at 2786.

Both the original Emergency Petroleum Allocation Act ("EPAA") of 1973 and the Act as amended by the Energy Policy and Conservation Act ("EPCA") contain one-House legislative veto provisions.

Essentially, four arguments are raised by the pleadings of the parties on the basis of the *Chadha* decision and the presence of legislative veto provisions in the EPAA and EPCA under which plaintiff is proceeding: 1) whether defendants lack standing to challenge the veto provisions; 2) whether the legislative veto provisions are severable from the remainder of the EPAA and EPCA; 3) whether *Chadha* should be applied retroactively; and 4) whether the issue presented by the application of *Chadha* to this case presents a substantial constitutional question that should be certified to the Temporary Emergency Court of Appeals.[2] As the Court finds defendants lack standing to challenge the veto provisions of the EPAA and EPCA, the Court does not address the three other issues.

## STANDING

 Constitutionally, each party seeking to litigate in federal court must meet three

---

**1.** Section 244(c)(1) provides in pertinent part: "If the deportation of any alien is suspended under the provisions of this subsection, a complete and detailed statement of the facts and pertinent provisions of law in the case shall be reported to the Congress within the reasons for such suspension."

**2.** The Court is advised that these issues are now pending before TECA in several different cases.

criteria: 1) injury in fact; 2) which is traceable to the challenged action; and 3) likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

Defendants claim they have been injured "by being subject to regulations promulgated pursuant to an unconstitutional statute and by being subjected to a lawsuit filed pursuant to an unconstitutional statute."[3] In support of their argument, defendants rely upon *EEOC v. Allstate Insurance Co.*, 98 L.C. ¶ 34,431 (S.D.Miss. 1983), in which the court found that the defendant had standing to challenge the unconstitutionality of the Reorganization Plan No. 1 of 1978 which contained a one-House veto provision. This Court disagrees and finds *Allstate* against the weight of authority.[4]

In *Allstate*, the EEOC brought suit against defendant Allstate Insurance Company to enforce the Equal Pay Act. Allstate challenged the authority of the EEOC to bring suit, relying upon the *Chadha* decision and the existence of the one-House veto provision in the Reorganization Act. Prior to the Reorganization Act, the authority to enforce violations of the EPA was vested in the Secretary of Labor. In response to Allstate's claim, the EEOC argued Allstate had no standing to challenge the authority of the EEOC to bring suit as Allstate had not been injured by the exercise of the legislative veto. The district

court found Allstate had suffered injury in fact, saying:

"Allstate has shown that it has personally suffered actual injury in that it has been subjected to a lawsuit filed pursuant to an unconstitutional statute. There is no doubt that a favorable decision by this Court would redress the injury of which Allstate complains. The identification of this injury to the allegedly unconstitutional passage of the Reorganization Plan No. 1 of 1978 is obvious insofar as the EEOC would have no legal authority to engage in litigation for the purpose of enforcing the provisions of the Equal Pay Act without a constitutional delegation of power from Congress. Therefore, the injury of Allstate in that it is subject to litigation at the instance of a governmental agency whose authority to institute such litigation is being question on constitutional grounds meets the Art. III requirements of injury in fact which is traceable to the alleged illegality and which will be redressed by a favorable decision." *Allstate* at 45,702.

The question presented in the *Allstate* case and the case at hand was not directly before the Supreme Court in *Chadha*.[5] Although the Supreme Court did find that legislative one-House vetoes are unconstitutional, it was not necessary the Court address whether a retained one-House veto is unconstitutional even when not exercised; the one-House veto contained in the Immigration and Nationality Act was exercised to the direct detriment of Chadha. Moreover, there is no indication in *Chadha* that the Supreme Court intended to abro-

---

**3.** Defendants' reply to opposition of the United States to defendants' motion for summary judgment filed November 18, 1983 at page 3.

**4.** The Court's view is further supported by the recent Fifth Circuit Court of Appeals case, *EEOC v. Hernando Bank, Inc.*, 724 F.2d 1188 (1984). The Fifth Circuit did not specifically address the standing issue in *Hernando Bank* but found, contrary to *Allstate*, that the one-House legislative veto provision of the Reorganization Act of 1978 was severable.

**5.** In its errata opposition to defendants' motion for summary judgment filed November 10, 1983, plaintiff points to a distinction between *Allstate* and the instant case which the Court

believes has probable merit. The government argues that in *Allstate, but for* the reorganization plan submitted to Congress containing the legislative veto, the EEOC would not have had authority to sue Allstate. The legislative vetoes contained in the applicable acts herein have nothing to do with the plaintiff's authority to enforce the acts. The veto provisions related solely to decontrol and had nothing to do with the President's power to impose price controls. The government thus argues even if the provisions containing the legislative vetoes are invalid, the regulations regarding price controls are still valid.

gate the Article III requirement of the Constitution that the party who invokes the court's authority must " 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.' *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976)." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).[6]

■ Here, the legislative one-House veto provision of the EPAA was exercised twice in 1975—prior to the incorporation of any defendants herein.[7] No exercise of the legislative veto has affected defendants; defendants can thus show no injury in fact.

For the above reasons, the Court concludes defendants lack standing to challenge the veto provisions.

IT IS THEREFORE ORDERED defendants' motion for summary judgment is overruled.

---

**6.** *See also Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); and *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

**7.** On July 16, 1974, the President formally proposed an amendment to existing regulations to decontrol crude oil prices gradually over 30 months. On July 22, 1975, the House disapproved the proposal pursuant to the veto provisions of the EPAA. H.R.Res. 605, 121 Cong.Rec. H 7225 (daily ed. July 22, 1975). On July 25, 1975, the President transmitted a second proposal for phased decontrol of crude oil over 39 months. The House disapproved this proposal on July 30, 1975. H.R.Res. 641, 121 Cong.Rec. H 7900 (daily ed. July 30, 1975). See Memorandum Order filed August 29, 1983 in *United States v. Exxon Corporation*, Civil Action No. 78-1035 in the district court for the District of Columbia at note 2. (Exhibit A to Errata Opposition of the United States to Defendants' Motion for Summary Judgment). The EPAA was amended and extended by the EPCA in December 1975. Pub.L. No. 94-163, 89 Stat. 871-969 (1975).