**In re COMPTON CORPORATION, Debtor.**

**COMPTON CORPORATION, By and Through Walter KELLOGG, Trustee, Appellee,**

**v.**

**The UNITED STATES DEPARTMENT OF ENERGY, Appellant.**

**No. CA4–86–647–K.**

United States District Court, N.D. Texas, Fort Worth Division.

Aug. 9, 1988.

Gardere & Wynne, David R. Snodgrass, Philip J. Nicholson, Diane G. Hoover Reed, Dallas, Tex., for appellee.

Harry G. Bayne, Dept. of Energy, Dallas, Tex., Arthur S. Weissbrodt and Patricia D. Graham, U.S. Dept. of Energy, Office of Gen. Counsel, Washington, D.C., for appellant.

## MEMORANDUM OPINION

BELEW, District Judge.

Pending before the Court in the above-styled and numbered cause is Appellant United States Department of Energy's (hereinafter "DOE") appeal from two Or-

ders of the United States Bankruptcy Court, Northern District of Texas. The first Order, entered June 27, 1984 as amended July 12, 1984, subordinates the DOE's bankruptcy claim (claim No. 812) against Compton as a penalty under section 726(a)(4) of the Bankruptcy Code, 11 U.S.C. § 726(a)(4), 40 B.R. 875. The second Order, entered June 27, 1984, enjoins the DOE under sections 362(a) and 105(a) of the Bankruptcy Code, 11 U.S.C. §§ 362(a) & 105(a), from litigating the merits of its claim before the Office of Hearings and Appeals (hereinafter "OHA"), 40 B.R. 880. The OHA is the adjudicatory body of the DOE. Appellee filed a responsive brief, Appellant filed an amended brief, oral arguments were heard before this Court, and both parties filed post-oral argument briefs. Appellate jurisdiction is based on 28 U.S.C. § 158. Both parties agree that the issue to be decided on appeal is the propriety of the Bankruptcy Court's entry of the above-referenced two Orders. After careful consideration of the arguments of counsel, briefs submitted, and the applicable law, the Court comes to the following decision.

## FACTS

The bankrupt, Compton, was a crude oil reseller during the period when mandatory petroleum price and allocation regulations were in effect. The DOE's claim against Compton is for $8,851,300.93 in oil price overcharges in violation of the regulations which were promulgated pursuant to the Economic Stabilization Act of 1970 (hereinafter "ESA"), 12 U.S.C. § 1904 note, and the Emergency Petroleum Allocation Act of 1973 (hereinafter "EPAA"), 15 U.S.C. §§ 757 et seq. In May of 1982, an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code was filed against Compton and its wholly owned subsidiary, one Gratex Corporation.[1] The case was later converted to a Chapter 11 reorganization proceeding and then ultimately back to

1. Although Gratex was originally a named debtor in the underlying bankruptcy case, Compton and Gratex moved in separate motions for subordination of the DOE's claim against them. Consequently, the *Compton* and *Gratex* decisions are the subject of separate appeals. The *Gratex* appeal was decided by United States District Judge Mary Lou Robinson of this Court by Order dated June 5, 1986. *See DOE v. Gratex Corp.,* 66 B.R. 209 (N.D.Tex.1986).

a Chapter 7 liquidation. The DOE's claim was filed pursuant to section 209 of the ESA as incorporated into section 5(a)(1) of the EPAA, 15 U.S.C. § 754(a)(1). Said claim was calculated via a Proposed Remedial Order (hereinafter "PRO")[2] issued by the agency's enforcement arm, the Economic Regulatory Administration (hereinafter "ERA"), as the amount received by the bankrupt through illegal certifications and markups between December, 1978 and December, 1980.[3] The DOE herein argues that its claim was improperly subordinated as a penalty because, in its opinion, the claim is more accurately characterized as one for restitution. With regard to the injunctive relief afforded Appellee herein, the DOE argues that its claim is exempt from the automatic stay provisions of section 362 of the Bankruptcy Code, and that the Bankruptcy Court abused its discretion by enjoining the DOE in reliance on section 105 of the Bankruptcy Code. As one would expect, Appellee takes exception to all three of the DOE's contentions.

## DISCUSSION

At the outset, the Court notes that it is bound to accept the factual findings of the Bankruptcy Court unless such findings are "clearly erroneous." Fed.R.Civ.P. 52(a); *In re: Braniff Airways, Inc.,* 783 F.2d 1283, 1287 (5th Cir.1986); *In re: Missionary Baptist Foundation of America,* 712 F.2d 206, 209 (5th Cir.1983). However, conclusions of law are fully reviewable by this Court. *Dallas/Fort Worth Regional Airport Board v. Braniff Airways, Inc.,* 26 B.R. 628, 630 (N.D.Tex.1982) (citations omitted).

### I. *Penalty vis-a-vis Restitution*

■ In the Court's opinion, the Bankruptcy Court's characterization of the DOE's claim as a penalty is purely a determination of law. In so characterizing claim No. 812, the Bankruptcy Court deemed the DOE's claim to be a fourth priority claim pursuant to section 726(a)(4) of the Bankruptcy Code, 11 U.S.C. § 726(a)(4), which provides in pertinent part that a claim is of the fourth priority if it is in "payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages ... to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim." *Id.*

In support of its argument that its claim is not a "penalty" for purposes of section 726(a)(4) of the Bankruptcy Code, the DOE relies almost exclusively on an opinion of the United States Temporary Emergency Court of Appeals (hereinafter "TECA")[4], to-wit, *United States Department of Energy v. West Texas Marketing Corporation,* 763 F.2d 1411 (TECA 1985), *on remand,* 82 B.R. 829 (N.D.Tex.1988). Specifically, the DOE successfully argued in that case that its claim was one for restitution and thus

---

**2.** The PRO is the product and a summary of the DOE's audit of Compton's activity in regard to illegal markups and certifications. It contains findings of fact and conclusions of law and serves to initiate a formal adjudicatory proceeding before the OHA to liquidate the DOE's claim against Compton. The PRO is not binding on Compton unless and until it is adopted by the OHA and reissued as a final remedial order. If Compton proffers no objections, the DOE may request the OHA to issue the PRO as a final remedial order. 10 C.F.R. § 205.193 (1988). However, in the event that Compton does make some objections, the OHA may issue a final remedial order either adopting, rescinding, or modifying the findings of fact and conclusions of law contained in the PRO. Alternatively, the OHA may conclude that no final remedial order should issue, or that it should be remanded to the DOE for further consideration. 10 C.F.R. § 205.199B(a) (1988).

**3.** The Court here notes the fact that Congress enacted a savings clause under which the DOE's enforcement authority is preserved for pre–1981 violations. *See* 15 U.S.C. § 767; *see also* 1 U.S. C. § 109.

**4.** The TECA has exclusive appellate jurisdiction of all appeals arising under the ESA and regulations promulgated pursuant thereto. *See* ESA, § 211(b)(2), 12 U.S.C. § 1904 note; *Bray v. United States,* 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975) (per curiam); *see also* 15 U.S.C. § 754(a)(1) (section 5(a)(1) of the EPAA expressly incorporating section 211(b)(2) of the ESA). Accordingly, the TECA also has exclusive jurisdiction over controversies arising under the EPAA. *See, e.g., Coastal States Marketing v. New England Petro.,* 604 F.2d 179 (2d Cir.1979).

was entitled to a second priority as that of any other general unsecured creditor pursuant to section 726(a)(2) of the Bankruptcy Code, 11 U.S.C. § 726(a)(2). *See West Texas Marketing,* 763 F.2d at 1426. However, Compton herein argues, as did appellee in *West Texas Marketing,* that the DOE's claim is wholly in the nature of a penalty since the "holder of such claim", i.e., the DOE, did not itself suffer any "actual pecuniary loss" as per the express language of section 726(a)(4) of the Bankruptcy Code. Alternatively, Compton argues that the DOE's claim can be fairly characterized as restitution only to the extent that the DOE can actually identify and reimburse the parties harmed by the illegal overcharges and certifications.[5] *Accord West Texas Marketing,* 82 B.R. at 830. In support of its alternative arguments in this regard, Compton offers a plethora of analogous case law that, although decided in different contexts, squarely holds that in the absence of an actual pecuniary loss, claims against a bankrupt are indeed penalties for pur-

poses of section 726(a)(4) of the Bankruptcy Code. *See, e.g., Simonson v. Granquist,* 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962); *In re Unified Control Systems, Inc.,* 586 F.2d 1036 (5th Cir.1978) (per curiam); *see also* 3 Collier on Bankruptcy, 381–82 (14th ed. 1977). Compton also argues that the DOE's choice[6] to proceed under section 209 of the ESA is further support for its position since pursuit of a section 209 remedy does not foreclose an injured party's option to seek private redress under the ESA's section 210.[7]

However, while this Court is of the opinion that the authorities proffered by Compton are well-reasoned and arguably quite consistent with a major policy underlying the Bankruptcy Code, to-wit, conservation of the estate's assets so there may be equitable distribution of same to those creditors who have suffered pecuniary loss,[8] we are constrained to follow the dictates of the TECA as expressed in *West Texas Marketing, supra.*[9] In that opinion, on petition

---

**5.** The DOE acknowledges that it sometimes, perhaps often, is unable to locate and reimburse the actual injured parties or entities. In that event, however, the DOE has promulgated a "Statement of Modified Restitutionary Policy in Crude Oil Cases." *See* 51 Fed.Reg. 27,899 (August 4, 1986). Said policy provides, *inter alia,* that excess monies, i.e., funds not directly reimbursed to actual injured parties, are to be distributed among the United States' and individual states' treasuries. However, as codified at 10 C.F.R. §§ 205.280–205.288 (1988), the aforementioned policy speaks in explicit terms only of distribution to the treasury of the United States, although other options are left to the discretion of the Director of the OHA. The DOE's procedure for identifying the proper recipients of restitutionary funds is also set out in the C.F.R. codification. *See id.*

**6.** The ESA and the EPAA together contain, *inter alia,* two sections, one which authorizes the DOE to seek restitution, *see* 12 U.S.C. § 1904 note, § 209 as incorporated into the EPAA, 15 U.S.C. § 754(a)(1), 10 C.F.R. §§ 205.192–205.-199J (1988), and the other which authorizes the DOE to seek civil or criminal penalties, *see* EPAA, 15 U.S.C. § 754(a)(3).

**7.** Section 210 of the ESA provides injured individuals or entities with private rights relative to violations of pricing regulations, including a refund of overcharges and treble damages. *See* ESA § 210; *see also Bulzan v. Atlantic Richfield Co.,* 620 F.2d 278, 283 (TECA 1980) (holding that

entry of remedial order by DOE does not foreclose private right of action for damages and/or injunctive relief under § 210). *Cf. Citronelle–Mobile Gathering, Inc. v. Edwards,* 669 F.2d 717, 722 (TECA) (remedy pursued by government under § 209 of ESA is to enforce public rather than private rights), *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982).

**8.** Indeed it is the purpose of the Bankruptcy Code's liquidation procedures to convert the bankrupt's remaining assets into cash for distribution among the creditors while at the same time giving the debtor a "breathing spell", i.e., an opportunity to start anew without being burdened with an albatross bred from previous business misfortunes. *See Williams v. United States Fidelity & Guaranty Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 290–91, 59 L.Ed. 713 (1915).

**9.** The Court here reiterates the fact that the TECA is statutorily the exclusive Court of Appeals for cases involving ESA and/or EPAA issues. *See* note 4, *supra; see also West Texas Marketing,* 763 F.2d at 1425 (Estes, J., specially concurring) (TECA has exclusive jurisdiction, citing *Bray v. United States,* 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975)). The Court also notes that the TECA's decision in *West Texas Marketing* constitutes a reversal of this Court's earlier affirmance of the Bankruptcy Court's characterization of the DOE's claim as a penalty.

for rehearing (per curiam), the TECA unequivocally held that the DOE's claim therein was "clearly for restitution and not for a penalty." 763 F.2d at 1426.[10] *Accord United States v. Sutton,* 795 F.2d 1040, 1061 (TECA 1986) ("An award of restitution [under the ESA's § 209] is an equitable remedy, and not a penalty."), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987). The court reasoned that the clear wording of section 209 of the ESA, as incorporated into the EPAA, dictates such a conclusion. *West Texas Marketing,* 763 F.2d at 1426. The court went on to note that a claim does not first have to be reduced to judgment in order to be allowed in bankruptcy, and that in any event, *"whatever its amount is,* [the] DOE's claim is not for 'any fine, penalty or forfeiture, or for multiple or exemplary, or punitive damages,' and thus cannot lawfully be relegated to the fourth priority." *Id.* (emphasis added).[11]

Further, in construing the Bankruptcy Code's definition of "fourth priority" in relation to the DOE's section 209 claim in *West Texas Marketing,* the TECA reasoned that "the question of whether a claim is 'compensation for actual pecuniary loss suffered by the holder of such claim' only arises when a penalty is involved." *Id.* (quoting 11 U.S.C. § 726(a)(4)). Concluded the court: "As no penalty is involved here whether the DOE suffered actual pecuniary loss is immaterial." *Id.* Finally, and perhaps most significantly, the TECA expressly vitiated Appellee's alternative argument herein that the DOE's claim can be for restitution only to the extent that it can identify and reimburse the parties or entities actually injured as a result of Compton's illegal overcharges. "WTM's [West Texas Marketing's] opinion as to the effectiveness of [the] DOE in distributing funds collected to the actual parties who were overcharged *cannot change the restitutionary character of [the] DOE's claim." Id.* (emphasis added).[12] *See also United States v. Exxon Corp.,* 773 F.2d 1240, 1286 (TECA 1985) ("[C]entral purpose of restitution is to determine ... amount by which ... wrongdoer [was] unjustly enriched and then to make him disgorge that amount. *No proof ... required that ... plaintiff was damaged, much less ... amount of any damage.")* (emphasis original) (quoting *Citronelle–Mobile Gathering, Inc. v. Edwards,* 669 F.2d 717, 722 (TECA), *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982)), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926, *reh'g denied,* 475 U.S. 1112, 106 S.Ct. 1526, 89 L.Ed.2d 923 (1986), *reh'g denied,* —— U.S. ——, 108 S.Ct. 766, 98 L.Ed.2d 781 (1988). *But see West Texas Marketing,* 82 B.R. at 830–31 (ordering DOE to identify with particularity parties actually injured and holding, *inter alia,* that distribution to governmental treasuries is contrary to spirit of Bankruptcy Code and thus to extent that it is unable to so identify injured parties, DOE's claim should be subordinated to

---

**10.** In this Court's opinion, the issue presented to the TECA in *West Texas Marketing* is identical to the issue presented herein, to-wit, whether the DOE's pursuit of an ESA § 209 remedy against a bankrupt is a "penalty" for purposes of section 726(a)(4) of the Bankruptcy Code, 11 U.S.C. § 726(a)(4). Compton's abstruse argument to the contrary is patently unpersuasive.

**11.** The court here stresses the TECA's "whatever its amount is" language to dispel Compton's "The Impact of This Case" argument. *See* Appellee's Brief at 3–5. In sum, Compton's argument in this regard is that to allow the DOE's claim a second priority would be grossly inequitable in that such a ruling would dramatically dilute the estate to the detriment of other creditors, i.e., those creditors who have suffered actual pecuniary loss. If funds are indeed dispersed

to governmental treasuries as a result of the DOE's inability to identify and locate those parties actually injured, the Court acknowledges that inequities may arguably accrue to other creditors. However, consistent with notes 4 & 9, *supra,* the Court is obligated to follow the TECA's language in *West Texas Marketing* and thus finds Appellee's argument in this regard to be unpersuasive.

**12.** In the Court's opinion, this language renders moot Appellee's prayer that the Court not dissolve the injunction issued by the Bankruptcy Court pending resolution of the Trustee's then pending "Motion to Disallow DOE Claim, Or, Alternatively, For Orders Establishing Procedures For Distribution Respecting the DOE Claim".

claims of other creditors).[13] In light of the foregoing, the Court is of the opinion that the Bankruptcy Court's relegation of the DOE's claim to the fourth priority must be reversed.

## II. *Propriety of Enjoining the DOE under Section 362(a)*

■ Appellant also contests the propriety of the Bankruptcy Court's reliance upon section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a),[14] in enjoining it from litigating the merits of its claim before the OHA. Rather, avers Appellant, its pursuit of an ESA section 209 remedy is exempt from the automatic stay proviso of the Bankruptcy Code's section 362(a) by virtue of the exceptions enumerated in the Code's section 362(b).[15] Appellee, largely upon the assumption that the DOE's claim is penal rather than restitutionary in nature, argues that the "plain language of the statute [11 U.S.C. § 362(a), (b) ]," mandates a contrary conclusion. *See* Appellee's Brief at 35.

At the outset, the Court here notes that the Bankruptcy Court's reliance on section 362 of the Bankruptcy Code to enjoin the DOE is also a question of law and thus is subject to *de novo* review. As such, the Court is persuaded that the DOE's claim is indeed exempt from section 362's automatic stay provisions. First, in light of the Court's penalty vis-a-vis restitution analy-

**13.** In its briefs submitted to the Court, Appellee avers that the DOE factually misled the TECA in *West Texas Marketing* as to its ability to identify and locate the actual injured parties. However, even if equipped with the record presented to the TECA in *West Texas Marketing,* this Court would decline to so find. Moreover, and in the Court's opinion, dispositively, the TECA's express language as quoted in the text accompanying this note unambiguously dissipates Appellee's alternative argument.

**14.** Section 362's "automatic stay" provision provides, in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title [11 U.S.C. §§ 301, 302, 303], or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. § 78eee(a)(3)) [15 U.S.C. § 78eee(a)(3) ], operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title [11 U.S.C. §§ 101 et seq.], or to recover a claim against the debtor that arose before the commencement of the case under this title [11 U.S.C. §§ 101 et seq.];

(2) the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case under this title [11 U.S.C. §§ 101 et seq.];

11 U.S.C. § 362(a)(1), (2). Congress enacted the automatic stay section for two reasons:

It gives the debtor a breathing spell from his creditors. It stops all *collection* efforts, all harassments, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay [also] provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.

S.Rep. No. 95–989, 95th Cong., 2d Sess. at 49, 54, 55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840–41, 5835 (emphasis added).

**15.** Subsection (b) of the Bankruptcy Code's section 362 provides in pertinent part:

(b) The filing of a petition under section 301, 302, or 303 of this title [11 U.S.C. §§ 301, 302, 303], or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. § 78eee(a)(3)) [15 U.S.C. § 78eee(a)(3) ], does not operate as a stay—

\* \* \* \* \* \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

11 U.S.C. § 362(b)(4), (5). The Court here notes that the policy underlying section 362 as a whole is to afford immediate relief to the debtor from understandably importunate creditors, and also to prevent dissipation of the debtor's remaining assets before an orderly, equitable distribution to creditors may be effected. *See, e.g., In re Ahlers,* 794 F.2d 388, 393–94 (8th Cir.1986).

sis, *supra,* we construe subsection 362(a)'s express language to support the DOE's position in this regard. Subsection (a)(1) of section 362 speaks in terms of an action to *"recover* a claim against the debtor." 11 U.S.C. § 362(a)(1) (emphasis added). Subsection (a)(2) refers to the *"enforcement* ... of a judgment obtained before the commencement of the [bankruptcy action]." 11 U.S.C. § 362(a)(2) (emphasis added). In the Court's opinion, neither subsection is applicable here. Subsection (a)(1) is not pertinent since the DOE has repeatedly represented that it only seeks to *liquidate* its claim before the OHA; thereafter, represents the DOE, once the amount of the claim is fixed with exactitude, it will stand in line with the other second priority creditors. Subsection (a)(2) is clearly inapposite to the case at bar since no judgment was obtained prior to the institution of the underlying bankruptcy proceeding in 1982.

■ But secondly, and in the Court's opinion, dispositively, subsection 362(b)'s express language and legislative history squarely support the DOE's attempt to liquidate its claim before the OHA.[16] Subsection (b)(4) of section 362 exempts actions or proceedings "to enforce [a] governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4). The purpose of this exception is explained in the Code's legislative history:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages*

for violation of such law, the action or proceeding is not stayed under the automatic stay.

S.Rep. No. 95–989 at 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5787, 5838; H.Rep. No. 95–595 at 343, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6299 (emphasis added). Appellee argues that the DOE cannot be seeking to exercise its police or regulatory powers since Compton is now long out of the business of reselling crude oil, i.e., there is no longer any activity to police or regulate. It is apparent, however, that Congress' intent in enacting section 362(b)(4) effectively vitiates Appellee's argument in this regard since the DOE is attempting to proceed with an activity expressly envisioned by Congress, to-wit, liquidating damages for activity over which the DOE indisputably has police and regulatory authority.[17] As further support for this argument, Appellee also suggests that a "pecuniary purpose" or "pecuniary interest" test should govern disposition of the section 362(b)(4) issue. *See* Appellee's Brief at 36–39. However, in light of our penalty/restitution analysis, *supra,* the Court necessarily finds this argument to be unpersuasive.

As to subsection 362(b)(5), it speaks in terms of the *"enforcement* of a judgement, other than a money judgment, obtained in an action" by a governmental entity seeking to enforce its police or regulatory powers. 11 U.S.C. § 362(b)(5) (emphasis added). In short, subsection (b)(5) dictates that actions to enforce money judgments are indeed subject to the stay provided for in subsection 362(a)(2). However, the key language here is "enforcement." First, no money judgment has yet been obtained. But secondly, even once obtained, the DOE

---

**16.** The Court here notes that it does find solace in the fact that resolution of this issue is contained within the statute itself since, after examining some of the case law proffered by the DOE in support of its § 362 argument, reliance on same would be precarious at best and indeed better characterized as patently misplaced. *See, e.g., United States v. Sutton,* 585 F.Supp. 1478 (N.D.Okla.1984) (cited on pg. 15 of Appellant's Brief (and *attached* thereto as Appendix B!) for proposition that a DOE enforcement action such as one at bar is exempt under § 362(b)(4); virtually *no* mention of *any* Bankruptcy Code sec-

tion in *Sutton* much less "holding", as represented by DOE, that such an action is exempt as per § 362(b)(4)). In light of the foregoing and not solely to be comminatory, the Court invites counsel for Appellant to acquaint themselves with the nuances and salutary effects of Federal Rule of Civil Procedure 11.

**17.** Appellee's argument in this regard also ignores the savings clause discussed *supra* at note 3.

now only seeks to liquidate its claim; enforcement of any such judgment would come later, i.e., when funds are equitably dispersed to second priority creditors. The legislative history to subsection 362(b)(5) is also instructive:

> Paragraph (5) makes clear that the exception extends to permit ... the entry of a money judgment, but does not extend to permit enforcement of a money judgment [because] enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

S.Rep. No. 95–989 at 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5787, 5838; H.Rep. No. 95–595 at 343, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6299. Since Congress did not provide a definition for the term "enforcement of a money judgment", this Court is bound to infer its commonly recognized meaning as established at common law and equity. *See NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672, *reh'g denied*, 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 (1981). As such, and given the unusually clear legislative history for subsection 362(b)(5) discussed *supra*, the Court has little difficulty in concluding that *obtaining* a money judgment and *enforcing* it are conceptually quite distinct; indeed they often are the objects of two entirely separate legal proceedings. In sum, it appears to the Court that the seizing and selling of the debtor's property to satisfy a judgment are the activities proscribed by subsection 362(b)(5). Moreover, there is no apparent reason why the stay provisions should be construed more expansively than necessary to effectuate their legislative purpose. In light of the foregoing, the Court is of the opinion that the OHA proceeding contemplated by the DOE is indeed exempt from the automatic stay provisions of section 362 and thus the Bankruptcy Court's decision in this regard must be reversed.

### III. *Propriety of Enjoining the DOE under Section 105*

■ Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary to carry out the provisions [of the Code]." 11 U.S.C. § 105(a). In the instant case, the Bankruptcy Court, as an alternative to its position that section 362 automatically stayed the proceeding before the OHA, relied on section 105(a) to enjoin the DOE from liquidating its claim in that forum. There is little doubt that much discretion was contemplated by Congress when it enacted section 105.

> Subsection (b) [of section 362] lists seven exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction. The [bankruptcy] court has ample other powers to stay actions not covered by the automatic stay. Section 105 ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity [citations omitted]. Stays or injunctions ... will be granted or issued under the usual rules for the issuance of injunctions.

S.Rep. No. 95–989 at 51, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5787, 5837; H.Rep. No. 95–595 at 342, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5963, 6298. Indeed it is axiomatic that a bankruptcy court is in itself a court of equity. *See Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *In re Beck Industries, Inc.*, 605 F.2d 624 (2d Cir.1979). Finally, consistent with the legislative history discussed *supra* and Bankruptcy Rule 7065, injunctive relief granted pursuant to section 105 must be examined in light of the standards dictated by Federal Rule of Civil Procedure 65.

The oft expressed, near-hornbook standards for the issuance of injunctions put the party seeking it to the burden of demonstrating that (1) there is a substantial likelihood that she will prevail on the merits, (2) there is a substantial likelihood that she will suffer irreparable injury if the injunction is not granted, (3) the threatened injury to her outweighs any harm that might accrue to the nonmovant if the in-

junction is granted, and (4) the granting of the injunction will not disserve the public interest. *Tubwell v. Griffith*, 742 F.2d 250, 251 (5th Cir.1984) (citations omitted). It is equally clear that the issuance of an injunction is, as a general matter, within the discretion of the court. *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir.1986). Such discretion, however, while "considerable", is not "unbridled." *Id.* As such, the appropriate standard for appellate review is whether the issuing court abused its discretion, *Interox v. PPG Industries, Inc.*, 736 F.2d 194, 198 (5th Cir. 1984),[18] and the burden of showing an abuse of discretion rests upon the appellant. *Meyers v. Moody*, 723 F.2d 388 (5th Cir.1984) (per curiam). *But see Dore & Associates Contracting, Inc. v. American Druggists' Ins. Co.*, 54 B.R. 353, 361 (Bankr.W.D.Wis.1985) ("Since ... injunction under ... § 105 is an extraordinary remedy which reaches matters not covered by the automatic stay of section 362[,] ... party opposing relief from the injunction should bear the burden of proof as to the propriety of leaving ... injunction in effect."). Finally, a decision to grant injunctive relief may also be reversed on appeal if the lower court "failed to apply the proper legal standard." *Securities and Exchange Commission v. Mize*, 615 F.2d 1046, 1051 (5th Cir.), *reh'g denied*, 618 F.2d 781 (5th Cir.), *cert. denied*, 449 U.S. 901, 101 S.Ct.

271, 66 L.Ed.2d 131 (1980). *Cf. Dixon v. Heckler*, 785 F.2d 1102, 1106 (2d Cir.1986) (error in findings of fact, error in form or substance of injunction, or application of erroneous legal principles constitutes abuse of discretion), *cert. granted and vacated on other grounds sub nom., Bowen v. Dixon,* — U.S. —, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987); *United Telegraph Workers, AFL–CIO v. Western Union Corp.*, 771 F.2d 699, 703 (3d Cir.1985) (issuance of injunction must be upheld absent showing of abuse of discretion, obvious error in applying law, or serious mistake in considering proof).

With these standards in mind and in light of the fact that we have already concluded that the proceeding before the OHA is exempt from the automatic stay provisions of section 362, the Court is of the opinion that the Bankruptcy Court improperly employed section 105 to enjoin the DOE. Without addressing the DOE's argument that Compton failed to satisfy the four prerequisites for the issuance of the injunctive stay, or Compton's arguments to the contrary,[19] the Court finds that the plain language of section 105 mandates a finding of abuse of discretion, or, at minimum, an application of improper legal standards.[20] While there is no doubt that a bankruptcy court has the power to issue an injunction under section

---

**18.** It should also be noted, however, that consideration of the four factors prerequisite to awarding injunctive relief involves mixed questions of law and fact. *Buchanan v. United States Postal Service*, 508 F.2d 259, 267 n. 24 (5th Cir.1975). While the lower court's findings of fact may not be disturbed unless "clearly erroneous", Fed.R.Civ.P. 52(a), conclusions of law are fully reviewable by this Court. *Buchanan*, 508 F.2d at 267 n. 24 (citations omitted).

**19.** The Court notes, however, that at least with regard to the irreparable harm requirement, it is persuaded that Compton failed to meet its burden. "Irreparable harm in the bankruptcy context refers to either irreparable harm to the interest of a creditor or irreparable harm to the bankruptcy estate." *Dore & Assoc., supra* at 357. Compton avers that it is "obvious" that this requirement has been met since, if the DOE is permitted to go forward before the OHA, the trustee will be required to litigate a claim in that tribunal before it is determined that the claim is a proper one. Appellee's Brief at 49.

But in light of *West Texas Marketing* and our construction of same *supra*, such an argument is without merit. Compton also argues that the estate would be irreparably harmed by the time and expense of litigating the claim before the OHA. *Id.* But "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51–52, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938)). *Accord United States v. Air Florida, Inc.*, 48 B.R. 749, 751 (S.D.Fla.1984).

**20.** *Cf. GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.1985) ("A [discretionary] stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay [is] framed to contain reasonable limits on its duration.").

105 to protect an interest of the estate which is beyond the protection of the automatic stay, *see e.g., In re Guy C. Long, Inc.,* 74 B.R. 939 (E.D.Pa.1987), section 105 only empowers a bankruptcy court to issue such an order to "carry out the *provisions*" of the Bankruptcy Code. *See Johnson v. First Nat. Bank of Montevideo, Minn.,* 719 F.2d 270, 273 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Having concluded that the OHA proceeding is not only consistent with the provisions of the Code but indeed expressly exempted from automatic stay via subsections 362(b)(4) and (b)(5), it can hardly be said that section 105 was employed in the instant case to carry out the Code's provisions. Section 105 authorizes bankruptcy courts, *inter alia,* to issue injunctions to effectuate the exercise of their jurisdiction. *United States v. Sutton,* 786 F.2d 1305, 1307 & n. 17 (5th Cir. 1986) (citing 5 Collier on Bankruptcy, ¶¶ 105.02, 105.03 (15th ed. 1985)). "[But section 105] does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Id.* at 1308 (citation omitted). *See also In re Continental Air Lines, Inc.,* 61 B.R. 758, 781 n. 47 (S.D.Tex. 1986). Therein the court stated that "section 105 does not give bankruptcy courts the authority to contravene specific provisions of the Code." *Id.* "[T]he bankruptcy court is limited by the express terms of the Code; the court must apply bankruptcy law, not rewrite it." *Id.* "Thus, [a reviewing court] takes a dim view of unbridled reliance upon the Code's extraordinary writ provision. Section 105 is to be relied upon in aid of the bankruptcy court's jurisdiction, but it does not provide a 'candy store' which allows the Court to pick and choose among properly promulgated rules which it likes or dislikes." *Id.* (citing *In re Arnage, Inc.,* 33 B.R. 662 (E.D.Mich.1983)). *Cf. In re D.M. Barber, Inc.,* 13 B.R. 962, 964–65 (Bankr.N.D.Tex.1981) (inappropriate to employ § 105 to stay NLRB liquidation proceeding).

The Court is also persuaded by the DOE's argument that liquidation of its claim before the OHA is not only permissible but indeed advantageous to the Trustee as well as it. The premise for this argument is that the OHA, as a specialized tribunal, has the necessary expertise to liquidate such a complex claim. Accordingly, so the argument goes, the claim will more likely be fairly liquidated and done so in a more expeditious and cost effective fashion. While it is true that a bankruptcy court usually does supervise the liquidation of claims, "the rule is not inexorable." *Nathanson v. National Labor Relations Board,* 344 U.S. 25, 30, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). In *Nathanson,* the Supreme Court upheld the appellate court's finding that the bankruptcy court should defer liquidation of a back pay claim to the NLRB. *Id.* Reasoned the Court: "[S]ound discretion may indicate that a particular controversy should be remitted to [a tribunal other than the bankruptcy court] for litigation. *And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court should normally stay its hand pending an administrative decision." Id.* (emphasis added). In this Court's opinion, such language is certainly pertinent to the case at bar. As noted *supra,* Congress statutorily entrusted enforcement of EPAA and ESA to the DOE, whose adjudicatory body is the OHA. Moreover, as also discussed *supra,* appellate adjudication of controversies arising under these statutes has been statutorily entrusted to one court, i.e., the TECA. Such action, on Congress' part, was clearly taken to maintain consistency of decision in an area rife with statutory and regulatory complexity, *see, e.g., Bray, supra,* n. 4 423 U.S. at 74, n. 4 96 S.Ct. at 308–09, and "the court should not interfere with the prerogative of the agency to select the remedy which for rational reasons is deemed most appropriate." *Cibro Petroleum Products v. Sohio Alaska Petroleum Co.,* 602 F.Supp. 1520, 1528 (N.D.N.Y.1985) (citations omitted), *aff'd,* 798 F.2d 1421 (TECA), *cert. dismissed,* 479 U.S. 979, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). *Cf. Matter of Gary Aircraft Corp.,* 698 F.2d 775, 783–84 (5th Cir.) (holding that bankruptcy

court should defer liquidation of government contract claim to Board of Contract Appeals and citing, *inter alia, First State Bank and Trust Co. v. Sands Springs State Bank*, 528 F.2d 350, 354 (10th Cir. 1976) ("Bankruptcy courts should be reluctant to entertain questions which may be equally well resolved elsewhere.")), *cert. denied*, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed. 2d 92 (1983).[21] In the case at bar, the DOE has chosen to pursue a restitutionary remedy against Compton which includes liquidation of the claim before the OHA, quite likely the nonpareil forum to hear such a claim. Notwithstanding the Trustee's arguments to the contrary,[22] this Court does not believe that any pernicious effects will accrue to other creditors if the OHA proceeding goes forward. In light of the foregoing, the Bankruptcy Court's employment of section 105 to enjoin said proceeding must also be reversed.

A Judgment in conformance with this Memorandum Opinion will issue on even date.

### JUDGMENT

In conformance with the Memorandum Opinion entered this same date, it is ORDERED that the United States Bankruptcy Court's Order of June 27, 1984, as amended July 12, 1984 (subordinating the DOE's claim to the fourth priority), and Order of June 27, 1984 (enjoining the DOE from liquidating its claim before the OHA) should be and hereby are REVERSED and REMANDED for proceedings consistent with the above-referenced Memorandum Opinion.

IT IS SO ORDERED.

---

**21.** The *Gary* court also pointed out that allowing a specialized forum to *liquidate* a claim later to be presented to a bankruptcy court would not be offensive to the central goal of bankruptcy, to-wit, "requiring *satisfaction* of all claims against the bankrupt's estate [to] proceed in a central forum [i.e., the bankruptcy court]." *Gary*, 698 F.2d at 783 (emphasis added).

**22.** The Trustee has argued, *inter alia*, that the interests of the creditors may be threatened by allowing the OHA proceeding to go forward because such a proceeding "does ·not insure them the right of intervention." Appellee's Brief at 44. This argument, however, is plainly without merit. *See* 10 C.F.R. § 205.194(b) (1988) (interested parties permitted to intervene via specific procedures).