**In re APEX OIL COMPANY, et al., Debtors.**

**APEX OIL COMPANY, Apex Holding Company, and Clark Oil & Refining Corporation, Debtors/Objectors,**

v.

**UNITED STATES of America DEPARTMENT OF ENERGY, Respondent.**

**Bankruptcy Nos. 87–03804–BSS, 87–03818–BSS and 87–03805–BSS.
Motion No. 04–44.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Sept. 16, 1988.

Frederick J. Dana, Asst. U.S. Atty., St. Louis, Mo., Charles Stodghill, Commercial Litigation Branch, U.S. Dept. of Justice, Civil Div., Classification Unit, Washington, D.C.

Arnold M. Quittner, Robert Jay Moore, Gendel, Raskoff, Shapiro & Quittner, Clayton, Mo., Paul S. Aronzon, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for debtors, Dennis A. Ferrazzano Barack, Ferrazzano and Kirschbaum, Chicago, Ill., co-counsel for debtors.

Gregory D. Willard, Laurence M. Frazen, Bryan, Cave, McPheeters and McRoberts, St. Louis, Mo., Stephen J. Blauner, David C.L. Frauman, Milbank, Tweed, Hadley and McCloy, New York City, for the Lender Group.

Lloyd A. Palans, Gallop, Johnson and Neuman, St. Louis, Mo., Examiner.

Steven N. Cousins, Armstrong, Teasdale, Kramer, Vaughan & Schlafly, St. Louis, Mo., for Unsecured Creditors Committee.

## AMENDED MEMORANDUM OPINION

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

On December 24, 1987, Apex Oil Company, Apex Holding Co., Clark Oil & Refining Corporation (collectively referred to as the "Debtors" herein) and 49 other affiliated companies filed Voluntary Chapter 11 Petitions which were subsequently consolidated for procedural purposes only. On February 26, 1988, the Debtors filed a Motion For Show Cause Order, For Enforcement Of Automatic Stay, For Preliminary Injunction, And For Permanent Injunction (hereinafter the "Debtors' Motion") seeking to stay and enjoin the Department of Energy (hereinafter the "DOE") from further proceedings under Proposed Remedial Orders (PRO's) and Remedial Orders (RO's) issued by the DOE pursuant to the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 751 *et seq.* and DOE's Mandatory Petroleum Price Regulations found in 6 C.F.R. Part 150 *et seq.* and 10 C.F.R. Part 212 *et seq.* On April 13, 1988, the Debtors filed an objection to the DOE's claim and a request for estimation of such claim.

On May 9, 1988, the DOE filed a Motion requesting this Court to stay (pending the resolution by the District Court of the DOE motion for withdrawal of reference) any further proceedings with respect to (1) the Debtors' Motion and (2) the Debtors' request for estimation of the DOE claims. On May 11, 1988, the Debtors filed an application to enjoin the DOE from continuing any administrative proceedings pending this Court's determination of the injunction

and estimation issues. On May 27, 1988, this Court entered the following Orders relating to matters previously heard: (1) an Order enjoining the DOE from further administrative activity until directed to proceed by either the District Court or this Court; (2) an Order denying the DOE's motion requesting a stay of the bankruptcy proceedings; and (3) an Order resolving discovery disputes. On July 18, 1988, by Order of the Honorable William L. Hungate, the District Court denied DOE's motion to withdraw the reference. An Order of this Court dated July 22, 1988, resolved additional discovery disputes and pursuant to the parties' requests for additional time to pursue settlement discussion, rescheduled the hearing of these matters for August 3, 1988 (vacating an earlier setting of July 19, 1988). A hearing of these matters was held on August 3, 1988, and was attended by all parties' counsel.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding", which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B), and (G).

### FACTS

The claims involved in these proceedings stem from a DOE audit, pursuant to the EPAA, of the Debtors and two non-debtor affiliates (Novelly Oil Company "NOC", and Goldstein Oil Company "GOC") concerning their compliance from September 1973 through December 1979 with DOE's Mandatory Petroleum Price Regulations set forth in 6 C.F.R. Part 150, *et seq.* and 10 C.F.R. Part 212 *et seq.* Subsequent to the audit the DOE issued enforcement documents to pursue alleged violations through the DOE's administrative proceedings. There are currently four Proposed Remedial Orders (PRO's) pending before the Office of Hearings and Appeals (OHA) and two Remedial Orders (RO's) issued by the OHA. While authority to institute proceedings under the EPAA and its regula-

tory progeny expired on September 30, 1981, the enforcement of any proceeding pending on that date or brought to address an act prior to that date retains viability. 15 U.S.C. § 760g.

The Debtors are entitled to file objections to the pending PRO's and they have appealed one of the RO's to the Federal Energy Regulatory Commission (FERC). If the Debtors file objections and contest the PRO's, OHA will adjudicate the matters in controversy in a proceeding roughly equivalent to an adversary proceeding. A hearing for oral argument is held if requested, and unless there are submissions subsequent to the hearing, the agency's decisional process begins. This process involves several steps. First, an OHA Staff Attorney alone or in conjunction with a Deputy Director would review the case and recommend a disposition by submitting a draft decision to the Director of OHA who may approve or disapprove the decision. The OHA may then issue an RO, decide an RO is inappropriate and thus not pursue the matter further, or remand the matter for further action. An OHA decision may be appealed to FERC for review, and any disposition made by FERC is subject to judicial review by the United States District Court, and then if appealed, by the Temporary Emergency Court of Appeals.

Evidence indicating the length of time necessary to complete the administrative process was presented through exhibits and deposition testimony. According to Richard Tedrow, Deputy Director of OHA, the minimum time necessary between the commencement of a case before OHA and the filing of all pleadings, including the subject firms reply to the charges, is 95 to 115 days depending upon the participation of interested parties. If oral argument were then requested, Mr. Tedrow indicated it would take several weeks to a month to schedule the hearing. Additionally, an evidentiary hearing may be held, but this is an infrequent occurrence in these OHA proceedings. Although the existence of a

commitment to decide these cases within four months of oral argument is alluded to in a brief and in the deposition testimony; no such commitment was ever presented to this Court. Additionally, evidence of the time required for OHA's administrative process was presented in the form of the average number of days between the receipt of a notice of objection and the issuance of a final remedial order. That average for cases in which RO's issued in 1986 was 998 days; for RO's issued in 1987 the average was 1,051 days, and for RO's issued in 1988 the current average is 1,340 days.

The Debtors currently have until November 27, 1988, to present a plan, before their exclusive period expires. A sale of some of the assets belonging to the Debtors is currently pending along with a sale of the loan belonging to the secured lenders in this case. Each of these transactions along with the formulation of a plan is scheduled to consummate on or about November 27, 1988. The DOE claims against the Debtors constitute the largest unsecured claim in the case, totalling over $300,000,000.00.

DISCUSSION

The three central questions raised by the parties include: (1) whether the automatic stay of 11 U.S.C. § 362 applies to the DOE administrative processes;[1] (2) whether the two non-debtor companies, NOC and GOC, are properly included in these proceedings under 11 U.S.C. § 105 and (3) whether 11 U.S.C. § 502(c) requires the estimation by this Court of the DOE's claims. This discussion shall address these questions in the order presented, focusing upon the third issue concerning estimation. Bankruptcy Code section 362(a) provides for an automatic stay of proceedings against a debtor or property of the estate. Section 362(b) provides for exceptions to the stay including § 362(b)(4) which provides that filing a bankruptcy petition does not operate as a stay:

1. Although the Debtors alternatively sought an injunction under 11 U.S.C. § 105, this Court declines to issue such an Order with respect to the Debtors because of its belief that (1) the

provisions of 11 U.S.C. § 362(a) or (b) are dispositive; and (2) specific statutory provisions are preferable to general authority.

under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.   11 U.S.C. § 362(b)(4).

Although the DOE argues that its proceedings fall within the § 362(b)(4) exception to the automatic stay, this Court does not agree.

The legislative history of § 362(b)(4) indicates that Congress intended this section to be narrowly construed:

> to protect the public health and safety and not apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

House Report 95–595, 95th Congress, 2nd Session, reprinted in 1978 U.S.Code Cong. & Admin.News pages 5787, 6445, (1978). The House Report clarifies that the (b)(4) exception is limited to those situations:

> where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, ...

House Report 95–595, 95th Congress, 1st Session, 343 (1977), reprinted in 1978 U.S. Code Cong. & Admin.News, 5963, 6299.

The United States Court of Appeals for the Eighth Circuit has interpreted this section in the case of *State of Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768 (8th Cir. 1981).   That Court used a "pecuniary interest" test to determine that "Missouri's grain laws, although regulatory in nature, *primarily related to the protection of the pecuniary interest in the debtor's property* and not to matters of public safety and health." *Missouri v. U.S. Bankruptcy Court,* 657 F.2d at 776 (emphasis added). The Court reasoned that:

> the term "police or regulatory power" refers to the enforcement of state laws effecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court.

*Missouri v. U.S. Bankruptcy Court,* 647 F.2d at 776.

In accordance with the legislative history, the Court clearly distinguished the administrative enforcement of legislation designed to protect the health, welfare and safety of the citizenry;  from that designed to protect a pecuniary interest in a debtor's estate;  and exempted *only* the former from the § 362 automatic stay.

■   The DOE in part relies upon the case of *In re Compton Corporation,* 90 B.R. 798 (N.D.Texas 1988), to support the position that the automatic stay provisions of § 362(a) do not apply to the administrative liquidation of the DOE claims.   The *Compton* Court held that (1) the DOE procedures to liquidate claims based upon the legislative and regulatory provisions involved herein not subject to the automatic stay provisions of § 362(a)(1); and furthermore (2) § 362(b)(4) exempts the administrative liquidation of the DOE claims from the operation of the stay.   For the following reasons this Court respectfully disagrees with the *Compton* Court and declines to follow that decision.   First, the provisions of § 362(a)(1) unquestionably apply to unliquidated claims (and act to stay further steps toward such liquidation without a Bankruptcy Court Order).   See *Collier On Bankruptcy,* 15th Ed., § 362.04 at pp. 362–32, 362–33.   Second, this Court believes the application of § 362(b)(4) to DOE claims of the nature involved both here and in *Compton* to be an erroneous conclusion based upon a circularly flawed rationale. The *Compton* Court reasoned that the DOE claims fall within the scope of § 362(b)(4)

> since the DOE is attempting to proceed with an activity expressly envisioned by Congress, to-wit, liquidating damages for activity over which the DOE indisputably has police and regulatory authority.

*Compton,* 90 B.R. 798 (N.D.Texas 1988). This "logic" propounds a circular conclusion without any rationale.   The Court simply stated that the activity involved falls within the Congressional intent of the provision (to allow police and regulatory actions to proceed unstayed) because it is an

activity over which the agency has police and regulatory authority. Such a conclusion is unsupportable. The *Compton* opinion disregards the legislative history of Section 362(a) and misapplies the rationale of the Eighth Circuit's opinion in *State of Missouri* supra. The *Compton* decision disrupts the balance between the police and regulatory activity of an agency which deals with issues of health, safety and welfare; and other agency activity that merely pursues a pecuniary interest in the estate. Although even a penalizing proceeding might be considered a police and regulatory activity due to its deterrent effect, there is no such effect here, where regulations specifying violations of the act were repealed more than seven years ago.

Guided by the above cited authorities this Court finds the DOE proceedings to be in pursuit of a pecuniary interest rather than protecting health, safety or welfare. The DOE enforcement procedures involved herein protect only the pecuniary interest of the DOE. The agency is the recipient of all monies recovered and thus no protective or preventive function is now served by enforcement of the repealed regulations. Due to the pecuniary rather than protective nature of the regulations underlying these procedures, this Court finds the DOE administrative actions to be outside the scope of the § 362(b)(4) exception and therefore subject to the automatic stay of § 362(a)(1).

■ Turning to the issue of the appropriate treatment of the non-debtor affiliates NOC and GOC, this Court finds that judicial economy dictates the inclusion of these companies in these bankruptcy proceedings insofar as the determination of the DOE claims is concerned. Under § 105 of the Code this Court has the authority to issue Orders necessary or appropriate to implement the Code. In this case the Debtor and non-debtor companies share common principals, common records and common allegations lodged against them in the DOE claims. The economy of the governmental as well as private sector resources dictates that these common claims be treated to-gether whether that treatment occurs in the administrative setting of the OHA or in this Bankruptcy Court.

■ Apart from the stays imposed under § 362 or § 105, the Debtors have requested this Court to estimate the DOE claims under § 502(c) of the Bankruptcy Code. Focusing upon this final question of estimation requires an examination of the advantages and disadvantages of liquidating these claims in the Bankruptcy Court verses achieving that liquidation in the administrative tribunal of the DOE. Section 502(c)(1) *requires* the estimation of:

> any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.

11 U.S.C. § 502(c)(1). The following examination of the potential time and cost involved in a continuation of the DOE's administrative proceeding supports this Court's finding that an estimation of these claims is required in this case.

The administrative process as outlined in the facts recited herein is a time consuming and resource intensive undertaking for these Debtors. From 1986 to 1988, the average length of time necessary to process claims in the DOE administrative agencies increased from 998 days to 1,340 days. Although a commitment to expedite these proceedings with respect to the Apex companies was referred to in DOE's brief and depositions; this Court has no evidence of this commitment upon which it can reasonably rely or upon which it can responsibly place the interests of the Debtors and the creditors working so diligently toward a successful resolution of this case. In addition to the aforementioned administrative time requirements, the historically inimical relationship between these parties and their counsel [2] will protract the already lengthy administrative process. This Court thus concludes that a liquidation of these claims in the DOE administrative tribunals will be intolerably time and labor intensive resulting in unnecessary delay and excessive and unnecessary costs. The advan-

---

**2.** The record in this case amply illustrates the contentious interaction between counsel which has exasperated these proceedings and caused unnecessary complexity and delay.

tage of an administrative liquidation is that the specialized DOE tribunal enjoys more expertise and experience than a Bankruptcy Court in liquidating complex claims such as those at issue herein. But liquidating claims is the daily task of this Court and complexity is neither unfamiliar nor unwelcome. Any advantage to an administrative liquidation is greatly outweighed by the necessary efficiency of a liquidation which this Court could achieve through a summary proceeding such as that adopted in the case of *Matter of Baldwin United Corp.*, 55 B.R. 885 (Bankr.S.D.Oh.1985). The effect of delay and the unavoidable costs which would be visited upon the already beleaguered debtor estates is inconsistent with the interests of all other parties in these Chapter 11 proceedings and the time table by this Court to bring these cases to a successful resolution.

This Court concludes that the automatic stay of § 362 properly applies to the DOE proceedings against the Debtor and § 105 properly applies to the non-debtor affiliates involved. The timely, efficient and economical liquidation of this substantial claim is essential to the possibility of a successful outcome for the Debtors and the creditors in this case. This Court shall therefore perform an estimation of the DOE's claims in order to prevent the debilitating and potentially fatal delay which the lengthy, costly administrative process would cause. An Order consistent with this Memorandum Opinion shall issue simultaneously herewith.

### AMENDED ORDER

At St. Louis, in this District, this 16th day of September, 1988.

The Debtors' Motion For Show Cause Order, For Enforcement Of Automatic Stay, For Preliminary Injunction, And For Permanent Injunction filed February 26, 1988. A final hearing of this matter was held August 3, 1988, at which time all parties were heard and evidence was presented. For the reasons set forth in the Memorandum Opinion of this date, it is

ORDERED that the automatic stay provisions of 11 U.S.C. § 362(a) and § 105

(with respect to Novelly Oil Company and Goldstein Oil Company) are applicable to the DOE administrative proceedings; and the Request to Estimate the DOE claim under 11 U.S.C. § 502(c) filed May 9, 1988, is SUSTAINED.

IT IS FURTHER ORDERED that the parties shall appear on September 22, 1988, at 11:00 a.m., for a conference on the estimation procedures to be used in this case.