**In re ST. LOUIS SOUTH PARK II, INC., Debtor.**

**ST. LOUIS SOUTH PARK II, INC., Plaintiff,**

**v.**

**MISSOURI HEALTH FACILITIES REVIEW COMMITTEE, Defendant.**

Bankruptcy No. 89–20739–C–11.
Adv. No. 89–2064–C–11.

United States Bankruptcy Court,
W.D. Missouri, C.D.

Feb. 23, 1990.

Simon B. Buckner, Asst. Atty. Gen., Jefferson City, Mo., for MHFRC.

Jerry W. Venters, Jefferson City, Mo., for debtor.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

In 1985, debtor applied to the Missouri Health Facilities Review Committee, hereinafter MHFRC, for a Certificate of Need, hereinafter CON, to build a one hundred-fifty bed nursing home in the St. Louis area. The CON was duly issued and was valid for six months. However, debtor was successful in seeking and obtaining six ex-

tensions each of six months' duration, and had applied for a seventh extension which the MHFRC reviewed on November 1, 1989 but failed to act on the request for extension prior to its formal adjournment. On December 12, 1989, debtor filed this Chapter 11 proceeding. On December 13, 1989, the MHFRC members voted "to declare the CON forfeited". At the conclusion of the meeting, an attorney, presumably for the Debtor, presented counsel to the MHFRC with a notice of the bankruptcy action that had been filed on the previous day. This was some twenty-four hours after debtor filed its petition for relief. The evidence is clear and the Court finds that the MHFRC did not know about the bankruptcy filing, at the time it acted although such action was post-petition.

The basic questions posed are whether the CON was property of the estate and whether MHFRC was exercising some police power of the State of Missouri in its forfeiture action. Since the State of Missouri concedes that the CON is an asset of the estate, this Opinion will address primarily the 11 U.S.C. § 362(b)(4) issue of police power exemption from the automatic stay.

The Bankruptcy Code provides in relevant part, under 11 U.S.C. § 362(a) that:

A petition filed ... operates as a stay, applicable to all entities, of ...

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or *could have been* commenced before the commencement of the case under this title ...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate ...

The State of Missouri concedes that the CON is an asset of the estate. The vote take by MHFRC to declare the CON forfeited is an action by an administrative agency to obtain, or exercise control over the Debtor's property. There is evidence to suggest that the MHFRC could have declared the CON forfeited prior to adjourning the November 1, 1989 hearing. However, the MHFRC's action is exempt from automatic stay if it falls within one of the exceptions listed in § 362(b).

■ Specifically, § 362(b)(4) provides that "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power" is not subject to automatic stay. In order to determine whether the MHFRC's action to revoke the Debtor's CON is an exercise of police or regulatory power, it is necessary to examine both the case law interpreting § 362(b)(4) and the Missouri statutes governing the Certificate of Need program. *See* Mo.Rev.Stat. § 197.300–197.365 (1986 & Supp.1989).

The instant case is most closely analogous to the facts of *In re King Memorial Hosp.*, 4 B.R. 704 (Bankr.S.D.Fla.1980). In *King*, the Florida Department of Health and Rehabilitative Services declared that the debtor-hospital had forfeited its exemption from Certificate of Need requirements shortly after the hospital filed bankruptcy. The *King* court narrowly interpreted § 362(b)(4) and held that the forfeiture was "not the exercise of a governmental unit's police power to protect the public health and safety". *Id.* at 708. The court noted that "[t]he health and welfare of the citizens of the State ... do not appear to be the overriding factor in the determination" to revoke the exemption. *Id.* The court also observed that "the state statutes put before this court do not appear to be enacted to protect the health and welfare of its constituents". *Id.* at 708–709.

The *King* court relied heavily on the authority of *In re Saugus General Hosp., Inc.*, 19 Collier Bankr.Cas. (MB) 651 (D.Mass. Jan. 8, 1978). *Saugus* involved a situation where the Massachusetts Department of Public Health terminated the debtor-hospital's operating license after the hospital shut down its operations. The Department of Public Health based its decision to terminate the hospital's operating license on state regulations that provided that "a hospital abandons its license by discontinuance of operations". *Id.* at 653.

The *Saugus* court held that the "automatic revocation regulation did not involve

an exercise of the police power in furtherance of the public welfare". *Id.* at 658. The court observed that "termination of the hospital's license was based on the hospital's discontinuance of operations, which directly related to its financial difficulties". *Id.* The court reached this conclusion because the Department of Public Health "did not indicate an intention to revoke the license based on public health" prior to the filing of the bankruptcy petition. *In re Saugus General Hosp., Inc.,* 19 Collier Bankr.Cas. (MB) 651, 658 (D.Mass. Jan. 8, 1978).

■ The rationale of *King* and *Saugus* appears persuasive in the instant case. It appears that the "overriding factor" in the MHFRC's decision to declare the CON forfeited was the Debtor's failure to make the required capital expenditures. It appears from the record that the MHFRC did not advance any reasons for its decision, based on public health, when the Debtor requested a seventh extension of the CON prior to filing its bankruptcy petition. Although the MHFRC had no knowledge of the Debtor's bankruptcy at the time of its action, there was ample opportunity to address public health concerns during the period when the Debtor received six separate extensions of the original CON, or sought the denied seventh extension.

In fact, the State claims that the CON was automatically forfeited as a matter of law. The rationale of *Saugus* appears directly applicable to this argument. If the CON was automatically forfeited as the State suggests, then it appears that the basis of the forfeiture was the Debtor's failure to make the required capital expenditures and not because the MHFRC was acting to protect public health. Following the logic of *Saugus,* if a hospital's operating license cannot be revoked as an exercise of police power under § 362(b)(4), then it seems the CON cannot be forfeited once the Debtor files a petition. While hospital licensing requirements arguably are designed to protect the public health, the Missouri statutes governing the CON program primarily address development of new institutional health services. *See* Mo.

Rev.Stat. § 197.315 (Supp.1989). As the Court observed in *King,* the statutes do not appear to be designed for the purpose of directly protecting public health.

Title XII of the Missouri Revised Statutes is entitled Public Health and Welfare. Chapter 197 addresses "Medical Treatment Facility Licenses". The Certificate of Need provisions are within the licensing chapter for medical facilities. The Missouri legislature adopted the provisions pursuant to the National Health Planning and Resource Development Act of 1974 (the Act) 42 U.S.C. § 300m to § 300m-6. The Act authorized the states to designate a state agency to conduct health planning activities of the state. 42 U.S.C. § 300m-2(a)(1)(A). The Act authorized allocation of federal funds to assist states that chose to participate in the program. The Act's purposes were "improving the health of the area's residents, increasing the accessibility, acceptability, continuity and quality of health services, restraining increases in the cost of providing services and preventing unnecessary duplication of health resources in the area". S.Rep. No. 93-1285 93rd Cong.2nd Sess. *reprinted in* 1974 U.S.Code Cong. & Admin.News 7842, 7843-44.

The designated agency is further authorized to "administer a State certificate of need program which applies to the obligation of capital expenditures within the State and the offering within the State of new institutional health services and the acquisition of major medical equipment ...." The Certificate of Need program provides for review and determination under the program "before the time such equipment is acquired, such services are offered, substantial expenditures are undertaken in preparation for such offering, or capital expenditures are obligated". 42 U.S.C. § 300m-6 (1982). In 1987 Congress repealed the Act, but Missouri retained its Certificate of Need program.

The Missouri CON law provides in § 197.315:

1. Any person who proposed to develop or offer a new institutional health service within the state must obtain a

certificate of need from the committee prior to the time such services are offered.

2. Only those new institutional health services which are found by the committee to be needed shall be granted a certificate of need. Only those new institutional health services which are granted certificates of need shall be offered or developed within the state. No expenditures for new institutional health services ... shall be made by any person unless a certificate of need has been granted.

A new institutional health service includes any development, acquisition, or capital expenditure related to a health care facility. Mo.Rev.Stat. § 197.305(11) (1986). A CON may be forfeited for "failure to incur capital expenditures on any approved project within six months after the date of the order". Mo.Rev.Stat. § 197.315(9).

The CON law directly regulates "capital expenditures" by developers of new institutional health services. The forfeiture provision suggests that the regulatory scheme is primarily concerned with promoting economically efficient development of health services within the State. By controlling development of new institutional health services the State indirectly promotes the health and welfare of its citizens because the new health services are supplied in accordance with demand in an area. However, the Missouri CON program's primary purpose appears to be regulation and control of health service development as opposed to direct protection of the public through regulation of the actual delivery of these health care services.

Hopefully the above analysis is consistent with the Eighth Circuit's interpretation of § 362(b)(4). See State of Missouri v. United States Bankruptcy Court for the E.D. of Arkansas, 647 F.2d 768 (8th Cir. 1981); In re Apex Oil, 91 B.R. 860 (Bankr. E.D.Mo.1988); In re Blarney, Inc., 53 B.R. 162 (Bankr.D.Minn.1985); In re Rath Packing Co., 35 B.R. 615 (Bankr.N.D.Ia.1983). These cases distinguish between government actions with a public purpose and those with a pecuniary purpose in order to determine the scope of § 362(b)(4).

Laws that "although regulatory in nature, primarily relate to the protection of the pecuniary interest in the Debtor's property and not to matters of public safety and health" are not exempt from automatic stay. State of Missouri v. United States Bankruptcy Court for the E.D. of Arkansas, 647 F.2d 768, 776 (8th Cir.1981). A regulatory law that "directly conflicts with the control of the res or property" is not within the police power exception of § 362(b)(4). Id. at 776. This distinction was refined by In re Apex Oil, 91 B.R. 860, 863 (Bankr.E.D.Mo.1988). The court looked at the "pecuniary rather than protective nature of the regulations ..." to determine that claims by the United States Department of Energy against the bankruptcy estate were not exempt from automatic stay under § 362(b)(4) because the proceedings were "in pursuit of a pecuniary interest rather than protecting health, safety, or welfare." Id. at 864.

The single most important distinction between the present case and both State of Missouri and In re Apex Oil is that the MHFRC will not obtain a pecuniary interest in the Debtor's property as a result of its action. However, the MHFRC's action affects the control of property of the estate. The CON has pecuniary value to the Debtor. In addition the forfeiture appears to be based on reasons other than protection of public health, safety and welfare. Unlike the cases cited in the State's brief, which involves enforcement of environmental regulations, there is no clear protective purpose served by the CON law. MidAtlantic Natl. Bank v. New Jersey Dept. of Envtl. Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); Ohio v. Kovacs, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); Cournoyer v. Town of Lincoln, 790 F.2d 971 (1st Cir.1986). Following the rationale of both In re King and In re Saugus General Hospital, Inc., the actions by the MHFRC violated the provisions of § 362 and were not an action to enforce police or regulatory power.

The Missouri Health Facilities Review Committee's declaration that the Debtor's CON was forfeited on December 13, 1989 is without effect. After the Debtor filed its Chapter 11 petition on December 12, 1989, the MHFRC was subject to the automatic stay provisions of § 362(a) even though it had no knowledge of the petition. The action by the MHFRC was an attempt to exercise control over an asset of the Debtor's estate, the CON. The MHFRC was not engaged in enforcing a regulation with an overriding protective purpose. Therefore, the exemption from automatic stay under § 362(b)(4) for governmental unit's enforcing police or regulatory power in inapplicable, the action by the state was a postpetition and prohibited act that must be declared void. Nothing in this Opinion should be construed as suggesting what might be ruled in response to a proper motion for appropriate relief.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.